**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**

| | | |
|---|---|---|
| **OLIVIA HILL,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. _____** |
| | ) | **JURY DEMAND.** |
| **VANDERBILT UNIVERSITY,** | ) | |
| **Defendant.** | ) | |

**COMPLAINT FOR RELIEF FROM DISCRIMINATION AND**
**RETALIATION ON THE BASIS OF SEX, GENDER IDENTITY, AND**
**DISABILITY IN VIOLATION OF STATE AND FEDERAL LAW**

**INTRODUCTION**

OLIVIA HILL, a dedicated, 25-year, successful, frequently honored female employee of VANDERBILT UNIVERSITY, as well as a decorated Navy combat veteran, brings this Complaint against her long time employer, Vanderbilt University, because of the post-transition extensive, continuous, and egregious pattern of discrimination, harassment, and retaliation against her by Vanderbilt based on her sex, her gender identity, and her disability in violation of Title VII of the Civil Rights Act of 1964, Title IX of the Education Amendments of 1972, the Americans with Disabilities Act, the Rehabilitation Act of 1973, and the Tennessee Human Relations Act. That discriminatory treatment of Ms. Hill, the first employee at Vanderbilt to transition while an employee, also demonstrates stunning hypocrisy by Vanderbilt in violating it's own highly publicized "policies" alleging support for lesbian, gay, bisexual, and transgender employees.

**PARTIES**

1. Plaintiff OLIVIA HILL is an adult female citizen of the United States, who resides in Davidson County, Tennessee, and has resided there at all times pertinent to the events referred to

1

herein. She is transgender, and fully transitioned from presenting as male to presenting as female, as she has always identified, in 2019 while employed by Defendant VANDERBILT UNIVERSITY in the cogeneration plant (hereinafter "Power Plant" or "Plant").

2. Ms. Hill has 35 years of experience working in a cogeneration facility, including over 25 years of experience in a steam plant and 10 years of experience in the United States Navy. Ms. Hill is a combat veteran, and while serving in the Navy, Ms. Hill was the Engineering Officer of the Watch for over two years on board the U.S.S. Caron, which is the highest qualification level an enlisted person can achieve in the engineering department.

3. Ms. Hill has held every position at the Vanderbilt Power Plant, including the positions of Lead Person, Control Room Operator, High Voltage Electrician, Controls Specialist, Maintenance, Plant Supervisor, and Acting Plant Manager. Given her extensive experience, including at Vanderbilt University, Ms. Hill has considerable knowledge of the operation and maintenance of high pressure boilers, electrical generating equipment, and electrical circuits pertaining to boilers and balance of plant equipment. Ms. Hill created all of the control graphics currently controlling the Vanderbilt Power Plant.

4. Ms. Hill helped write the Standard Operational Procedures (SOP) for each piece of equipment within the Vanderbilt Power Plant, and as a result, is fully qualified to train others in the safe operation and maintenance of the Power Plant and related systems.

5. In 2019, Ms. Hill was awarded the Vanderbilt Chancellor Heart and Soul Award for "going far beyond her job expectations while carrying out the spirit and mission of Vanderbilt in all they do." In an article produced and distributed by the university to every employee, former Chancellor Nicholas Zappos noted "[i]n every area of her work, she has demonstrated exceptional

2

professionalism combined with true compassion and concern for her fellow workers."

6.  While under Ms. Hill's leadership, her team completed more training hours than any other teams within the department for the previous three years.  She has received the highest marks possible on performance reviews, including for her primary responsibility in her current position as Plant Supervisor, based on  her ability to keep accurate records, prepare reports, detect operating defects, assess efficiency and effectiveness, maintain work schedules, and uphold work standards and professionalism.

7.  Over the course of the 25 years Olivia Hill has worked for Defendant Vanderbilt University, she has never been disciplined or received negative evaluations.  She has been a model employee for decades and had no problems at work until she transitioned based on the recommendations of her medical care providers.

8.  Ms. Hill has been diagnosed with gender dysphoria,[1] and is thus an individual with a disability as that term is defined under §504 of the Rehabilitation Act of 1973 and the Americans with Disabilities Act because she has an actual impairment that substantially limits one or more of her major life activities.

9.  At all relevant times, Ms. Hill has been a "qualified individual" with a disability because she is able to perform the essential functions of her job with or without a reasonable accommodation.

10.  At all relevant times to this lawsuit, Ms. Hill was an "employee" of Defendant

---

[1] "Gender dysphoria" refers to psychological distress and/or discomfort resulting from an incongruence between a person's sex assigned at birth and that person's gender identity.  Gender dysphoria is a diagnosis listed in the Diagnostic and Statistical Manual of Mental Disorders (DSM-5), published by the American Psychiatric Association to diagnose mental conditions. The term focuses on the individual's discomfort as the problem, and not on the person's gender identity as a problem.

3

Vanderbilt University within the meaning of Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e(f)) and within the meaning of the Americans with Disabilities Act (42 U.S.C. §12101).

11. Defendant VANDERBILT UNIVERSITY ("Vanderbilt" or "Vanderbilt University") is a private, non-profit educational institution, which receives significant federal funds, and is incorporated and does business in Nashville, Tennessee. Ms. Hill was employed by Vanderbilt at all relevant times hereto, including at present.

12. Vanderbilt University widely publicizes itself as a positive place for LGBT students and staff, based on various non-discrimination policies it has adopted, including publicizing a "Transgender Tool Kit" while Ms. Hill's EEOC complaint was pending – but without applying its own "tools" to Ms. Hill, who, on information and belief, is the first and thus far only employee to transition while employed there.

13. On information and belief, Vanderbilt University has had formal non-discrimination and anti-harassment policies in place since July 2016; those policies specifically include protections from discrimination, harassment, and retaliation based on, among other things, sex, sexual orientation, gender identity/expression, and disability – those policies include such things as the following, none of which were applied to Ms. Hill's situation: that "social role transition" is an "important, and often the most important, aspect of a person's gender transition"; that "managers and supervisors should be sensitive" to the concerns of transgender employees and "should advise employees to respect the privacy and dignity of transgender employees"; that a person's preferred name and pronouns should be respected; that "transition plans" should be developed by transitioning employees and that people in management positions "could be essential partners in assisting with the transition plan.

14. At all relevant times to this lawsuit, Vanderbilt has been a non-federal, private employer

4

that receives significant federal financial assistance to fund its education programs and/or activities.

15.  At all relevant times to this lawsuit, Vanderbilt has been an "employer" within the meaning of Title VII (42 U.S.C. §2000e(b)), the Americans with Disabilities Act (42 U.S.C. §12111(5), the Rehabilitation Act of 1973 (29 U.S.C. §701 et seq.), and the Tennessee Human Relations Act (T.C.A. §§4-21-102 et seq.)

## JURISDICTION AND VENUE

16.  This Court has jurisdiction over Ms. Hill's claims pursuant to 28 U.S.C. §1331 and §1343 since the matters in controversy arise under the laws of the United States.

17.  This Court also has jurisdiction pursuant to 42 U.S.C. §2000e et seq. (Title VII of the Civil Rights Act of 1964), 20 U.S.C. §1681 et seq. (Title IX of the Education Amendments Act of 1972), 42 U.S.C. §12101 et seq. (the Americans with Disabilities Act, "ADA"), 29 U.S.C. §701 et seq. (the Rehabilitation Act of 1973), and 28 U.S.C. §1367 over the supplemental state law claims made by Ms. Hill seeking relief under the Tennessee Human Rights Act, T.C.A. §4-21-101 et seq.

18.  This Court has personal jurisdiction over both Plaintiff and Defendant.

19. At all relevant times, Defendant had more than 15 employees, and thus is subject to the requirements of Title VII (42 U.S.C. §2000e et seq.), the ADA (42 U.S.C. §12101 et seq.), and the Tennessee Human Rights Act (T.C.A. §4-21-101 et seq.).

20. Plaintiff received her Notice of Right to Sue from the Equal Employment Opportunity Commission (EEOC), dated July 2, 2021, regarding her EEOC Charge No. 494-2020-02589 alleging discrimination, harassment, and retaliation.

21.  Ms. Hill has complied with all prerequisites for bringing this action, including timely filing charges of discrimination with the EEOC; this lawsuit is timely filed within 90 days after Ms.

Hill received her Notice of Right to Sue from the EEOC on July 2, 2021.

22. Venue is proper in the Middle District of Tennessee pursuant to 28 U.S.C. §1391(b)(c) as Defendant is located in this District and subject to the jurisdiction of the Court, and because the events giving rise to the claims outlined herein occurred in this judicial district.

**FACTUAL BACKGROUND**

23. In January 1996, Ms. Hill was hired by Vanderbilt to work in the Cogeneration Plant of the Facilities Department ("the Power Plant"); at the time she was hired, Ms. Hill presented as male.

24. In late 2017, after 22 years of successfully working at Vanderbilt with no disciplinary or any other negative actions in her personnel file, Ms. Hill was diagnosed with gender dysphoria; her physician recommended that she begin living as a woman and that she receive medical treatment to transition to female, her proper gender identity.

25. Because Vanderbilt had adopted a non-discrimination policy that specifically includes sexual orientation and gender identity, Ms. Hill anticipated that transitioning as was medically necessary for her would be whole-heartedly supported by her superiors and the Administration at Vanderbilt – but, as outlined herein, she quickly learned that what Vanderbilt said in its policies and what it actually did in practice were two very different things.

26. When Ms. Hill was hired, no women were employed in the Power Plant – and even today, some 25 years later, Ms. Hill is the only woman working in the Power Plant of the Vanderbilt Facilities Department, a fact emphasized by the lack of accommodation for female employees, visitors, and contractors, like no women's restroom and/or locker room in the facility.

27. In January 2018 after her diagnosis, Ms. Hill met with a counselor at the Vanderbilt Employee Assistance Program to develop a plan for coming out to Vanderbilt as transgender and for

6

giving them notice that based on her medical diagnosis and the recommendation of her physician, she would begin living and working full-time as a woman.

28.    In approximately May/June 2018, and pursuant to Vanderbilt's internal equal employment opportunity procedures, Ms. Hill had several meetings with Stacy Crowhurst (Director of Finance for Administration and Facilities Services) and Allyson Sullivan (Executive Director of Business Operations) to work on the plan to explain to her supervisors, Mitch Lampley (Director of Engineering and Technical Support for Plant Operations), Tim Cook (Power Plant Manager), and Mark Petty (Assistant Vice Chancellor for Plant Operations), that she would be living and working full time as a woman, as her doctor recommended as necessary for her health.

29.    In mid-June 2018, Ms. Hill had a direct meeting with Mr. Lampley and Mr. Petty, with Ms. Crowhurst present, to notify them of her transition – which led to Mr. Lampley holding a meeting in July 2018 to explain Ms. Hill's transition to all the employees who reported to Ms. Hill, as well as to all managers and supervisors throughout the Facilities Department, including Ms. Hill's direct supervisor, Tim Cook (participating by telephone because he was out on medical leave); Ms. Hill was asked by Mr. Lampley not to be present to let the workers under her feel more comfortable.

30.    Then in August 2018, Ms. Hill learned that her direct supervisor, Tim Cook, had been discussing her transition with engineers and contractors with whom she works, and was using terrible slurs to describe her, such as "it", "trans freak", and "weirdo", among other names.

31.    Ms. Hill asked Mr. Lampley to speak to Mr. Cook, whom he supervised, to stop that unnecessary and improper behavior, and although Mr. Lampley said he would do so, Ms. Hill later found out that he did not in fact ever speak to Mr. Cook because he said he "did not know how".

32. As a result, even before Ms. Hill could act on her doctor's recommendation to transition

in order to address and relieve her gender dysphoria, both her direct superiors and the employees she managed began harassing her, calling her names, and generally making the workplace hostile and uncomfortable for her – which resulted in Ms. Hill believing it would be safest for her to continue to hide her true self at work and refrain from dressing in normal female attire until after her surgery, contrary to the advice of her physician.

33. Given the lack of support from her superiors and the hostility from her subordinates in the Power Plant after learning of Ms. Hill's intention to transition, Ms. Hill was forced to postpone for nine months her plans for the medically necessary gender-affirming surgeries she required and the date she would then return to work presenting as her true self, female, because she feared that the harassment and hostility would become worse.

34. By February 2019, Ms. Hill had enough and despite her fears about the treatment she was receiving at Vanderbilt, decided it was time to go forward to address her gender dysphoria, so on February 15, 2019, Ms. Hill went on leave to have her gender-affirming surgeries in North Carolina.

35. In late April 2019, while still on leave, Ms. Hill once again contacted Mr. Lampley after hearing that Mr. Cook was still calling her "it" in meetings; Mr. Lampley responded that he had been very busy but would "try" to speak to Mr. Cook.

36. When Ms. Hill returned to work on May 20, 2019 after her successful gender-affirming surgeries, the response she received was inconsistent with Vanderbilt's formal policies supporting LGBT members of the Vanderbilt community; she was mocked by her superiors, immediately treated differently by both superiors and subordinates, avoided by co-workers who would not speak to her, and found that people would stop talking and leave when she walked into a room – none of which was addressed by her superiors.

8

37.  At the time, Ms. Hill shared an office with Mr. Cook, her supervisor, where employees had always come in freely to discuss issues with Mr. Cook, regardless of her presence; however, unlike how she was treated prior to her transition, after it, people would walk into that shared office and motion for Mr. Cook to step outside to talk – so that Ms. Hill would not be present.

38.  Upon Ms. Hill's return to work after transitioning, Mr. Cook also treated her differently than before her transition by no longer inviting her to meetings for which she had always been included in the past and at which she should be present given her job responsibilities; he also intentionally withheld important information about equipment in the Plant, knowing that it would impede Ms. Hill's work as the person on call 24/7 to handle equipment problems, even though he would discuss those very issues with Mr. Lampley and Mr. Petty, who did not have responsibility to fix such problems.

39.  At one meeting, Ms. Hill begged Mr. Lampley and Mr. Petty to do something about the harassing and discriminatory way that her supervisor, Mr. Cook, was treating her – but no action was taken to correct Mr. Cook's improper behavior, and instead, Mr. Petty texted Ms. Hill at home that evening to come see him in the morning -- at which time he reprimanded her and told her she should "leave her emotions at home and just do her job", but did nothing about the harassing treatment Ms. Hill was receiving.

40.  In addition to failing to take any action regarding the harassing behavior directed at Ms. Hill by the men she supervised and her superiors at the Plant, Assistant Vice Chancellor Petty himself also continued to harass and discriminate against Ms. Hill by such things as repeatedly and intentionally calling her by her former male name (despite her name having been legally changed), continuing to use male pronouns when talking to her, and continuing to refer to her very intentionally

9

as "sir" in front of coworkers and contractors; Mr. Petty once even ended a meeting by smiling directly at Ms. Hill and saying, "thanks, gentlemen".

41. Although the harassment and inappropriate comments continued without stop, Ms. Hill sought not to rock the boat by trying to handle it herself, mistakenly trusting in what she thought was the inherent goodness in people, trying to be overly nice to the men treating her so badly, hoping that one day they would change; even Assistant Vice Chancellor Petty, a very senior supervisor over all Plant operations, continued his harassment relentlessly, doing such things as telling Ms. Hill that she has big feet and looks strange in women's clothes and asking her after a work meeting whether she still shaves her chest – and then shaking his head and saying, "ugh, the thought of you shaving your tits is gross".

42. Another time, Ms. Hill was accosted at work by a salesman who pulled her close to him, looked down her shirt at her breasts and said, "you have pretty eyes"; when Ms. Hill reported this incident to Mr. Lampley, one of her superiors, he dismissed her by saying "oh, that's just how he is", and then did nothing about it.

43. The environment encouraged by the behavior of these supervisors became so hostile and tense that many of the men under Ms. Hill's supervision refused to be directed by her, without suffering any repercussions from superiors; one employee, Gary Merritt, told Ms. Hill that he did not have to listen to her when she asked him to perform tasks, and on several occasions, responded to her directions by saying "fuck off" and walking away.

44. The atmosphere was made significantly worse by all three of Ms. Hill's supervisors – Mark Petty, Mitch Lampley, and Tim Cook -- repeatedly and blatantly mocking and making fun of her in front of the men she managed.

45. The harassment became so severe that one day, while Ms. Hill was in the breakroom surrounded by approximately 20 male employees, one of them asked her if she was a virgin and whether he could be the first to "fuck her" and "be the first to use her new vagina"; Ms. Hill reported this disgusting behavior to her direct supervisor, Mr. Cook, who replied "gross" and walked away – without reprimanding, disciplining, or otherwise taking any action whatsoever against the workers who engaged in that disgraceful behavior.

46. Based on the terrible example set by Ms. Hill's superiors who continued to call her by her former male name and/or by "sir" to other employees, Ms. Hill's subordinates also disrespected her, including calling her "sir" as well, even though she was their supervisor.

47. One employee, Ronnie Richard, in referring to Ms. Hill in front of other employees, said "that freak is not my boss and I will not listen to it", and another employee, Tim Baker, repeatedly called Ms. Hill by her former male name and by "sir" to her face, telling her that he "doesn't see or accept" her as a woman; Tim Baker's father, Jerry Baker, employed as a control room operator in the Plant, told Ms. Hill that she still sounded like a man and if she wanted people to address her as a woman, she needed to change her voice.

48. Despite Ms. Hill repeatedly bringing these issues to the attention of her supervisors, no one at Vanderbilt – not Ms. Hill's supervisors nor anyone else in a leadership position -- did anything to stop the behavior or to reprimand those who engaged in it; no reprimands came from management, no effort was made to change this repulsive behavior, and no changes were made to stop the increasingly hostile work environment in which Ms. Hill had to work.

49. Because management both engaged in and encouraged this type of harassment and discrimination against Ms. Hill, her subordinates continued to feel empowered also to say hurtful,

11

offensive, and highly inappropriate things about Ms. Hill and about women in general, right to her face – including telling her to "stay out of the heat so it doesn't mess up her makeup", and that she needed "to sit down so she doesn't break a nail" while on the floor of the Power Plant.

50.  At the time all of this harassment, discrimination, and simply ugly, hateful behavior occurred, the only thing that had changed in terms of Ms. Hill's employment was that she now presented as a woman rather than as a man, due to it being medically necessary for her to transition.

51.  Ms. Hill has also suffered from basic sex discrimination while working at the Vanderbilt Power Plant in terms of the facilities provided for her; the Power Plant has no women's restroom and/or locker room, but has a men's restroom, two men's locker rooms (dating back to segregation, when one was for white men and one for "colored" men – and both remaining only for men now), and one single-stall bathroom that either sex may use.

52.  In fact, because it is air-conditioned in a very hot Plant, the single-stall restroom is rarely vacant as male employees use it to cool off for lengthy periods of time; in November 2019, Ms. Hill asked Mr. Cook and Mr. Lampley if she could make it a bathroom for women and control room operators only, and they said yes – but after Ms. Hill followed through with a sign on the door and changed the locks, Mr. Lampley reprimanded her by email and Mr. Cook told another employee (Chase Bland) that "she [Ms. Hill] doesn't make decisions around here, let anyone use the bathroom if they want to".

53.  Because Vanderbilt refuses to provide a women's bathroom for her (or any other women who come to the Plant), Ms. Hill was forced to go outside, regardless of the weather, and walk to a completely different building to use the restroom, despite there being two restrooms and two locker rooms in the Plant.

12

54. On November 21, 2019, Mr. Petty called Ms. Hill into his office regarding a letter she planned to submit to the Chancellor in support of a rainbow crosswalk being built on the Vanderbilt campus in support of its LGBT students and staff; for some reason, Mr. Petty decided to involve himself in the process -- telling Ms. Hill that she needed to rewrite the letter so as to remove the references to the horrible treatment she had been receiving since she told her superiors of her transition, and then saying, "thank you, sir", intentionally using the wrong pronouns to hurt Ms. Hill.

55. Ms. Hill repeatedly made her supervisors, Mr. Lampley and Mr. Petty, aware of these instances of harassment and how hostile her workplace was becoming, but to no avail; Ms. Hill then sought relief by contacting Cara Tuttle Bell, the Director of Project Safe (Vanderbilt's Center for Sexual Misconduct Prevention and Response) on approximately November 22, 2019 to see if she could help the situation since she was outside the Plant.

56. Ms. Tuttle Bell referred Ms. Hill to Anita J. Jenious, the Director of Vanderbilt's Equal Employment Opportunity Office (EEOO); on or about December 4, 2019, both Ms. Tuttle Bell and Ms. Jenious then met with Ms. Hill regarding the discrimination and harassment to which she was being subjected.

57. On December 4, 2019, Ms. Hill met with Ms. Jenious, with Dr. Chris Purcell (then-Director of LGBTQIA Life at Vanderbilt) with her as a witness, and made a formal complaint to the Vanderbilt Equal Employment Opportunity Office (EEOO) regarding the constant discrimination and harassment to which she was being subjected, all because of her sex, gender identity, and disability -- but again, nothing was done to stop the behavior.

58. In fact, as described in more detail below, after filing her formal complaint to Vanderbilt EEOO, not only was nothing done to any of the perpetrators and no changes whatsoever made at the

13

Plant to address the issues raised by Ms. Hill, but <u>Ms. Hill</u> was punished by Vanderbilt putting her on administrative leave with pay in December 2019 – where she remains as of late September 2021, almost two full years later.

59. Ms. Hill begged Ms. Jenious, director of Vanderbilt EEOO, to transfer her to a different position to protect her but not to force her on leave, but without success; Ms. Hill, and apparently Vanderbilt itself, was aware of the danger presented to Ms. Hill at the time based on the culture in the Power Plant that anyone who rocks the boat or challenges the established ways, as Ms. Hill had done, will be set up to fail so they could be fired or get hurt in an "accident" so they will quit out of fear – the Plant has 69,000 high voltage electricity, high pressure super heated steam, rotating machinery, and ultra high pressure natural gas, all extremely dangerous.

60. On May 6, 2020 Ms. Hill received a letter from the Vanderbilt EEOO office stating that "After a thorough review of the matter, the EEOO concluded that there was no violation of Vanderbilt's nondiscrimination or anti-harassment policies".

61. Ms. Hill was advised by Ms. Jenious, the head of the Vanderbilt EEOO office, that the investigation was unable to corroborate her claims and that is why it was dismissed with no action – but in fact that was not true: a separate, unrelated sex discrimination complaint filed by another female employee from the same Facilities Department did include specific reference to as least one of the incidents reported by Ms. Hill – the other employee had been present and had heard Ms. Hill being called "sir" by Assistant Vice Chancellor Mark Petty at a meeting of departmental managers.

62. Ms. Hill later learned that Vanderbilt has been using a male outside contractor from Mid-South Instrumentation to fulfill her job duties while she is on forced administrative leave – and is paying him approximately four times what they pay her for the very same work, even though she

14

had been ready, willing, and able to return to work, provided Vanderbilt had rectified the situation and created a safe working environment for her.

63. Ms. Hill filed a formal complaint of discrimination with the Equal Employment Opportunity Commission (EEOC) on September 25, 2020.

64. In April 2021, Ms. Hill learned that Mr. Cook suddenly resigned after 32 years working at Vanderbilt, thus opening of the position of Plant Manager – a position for which Ms. Hill is uniquely and highly qualified after having worked at the Power Plant for 25 years and having served in literally all of the positions there, including as Acting Plant Manager.

65. Ms. Hill immediately applied for the position, reasoning that in addition to being highly qualified for it, being in charge of the Plant would allow her to create a different, safer, healthier environment there for all employees, including women.

66. Ms. Hill interviewed for the position – even though Vanderbilt required her to interview with Mr. Lampley, one of the perpetrators of the harassment and discrimination against her – and who she had specifically identified as such during her protected activity; within days, Vanderbilt told Ms. Hill that she would not get the job, without any explanation why and despite the fact that Vanderbilt was still accepting applications for the position (and to the day of filing this Complaint, still has the position open).

67. As a result of that discriminatory action, Ms. Hill filed a supplemental charge of sex discrimination with the EEOC.

68. By letter dated April 30, 2021 from Senior Associate General Counsel James C. Floyd to the EEOC, Ms. Hill was informed by Vanderbilt that her job was suddenly being re-classified, and that her salary was being cut by approximately $40,000.00 per year – with no reason being given and

no change in her job responsibilities, including no change to her being on call 24/7; Vanderbilt has nonetheless continued to pay the male contractor fulfilling Ms. Hill's duties while she has been on forced administrative leave at a substantially higher rate that is approximately 4 times what Vanderbilt was paying Ms. Hill.

69. Ms. Hill also recently learned from a contractor that Vanderbilt is apparently reassigning her office to Mr. Lampley – one of the perpetrators of the harassment and discrimination against her.

70. While the men who engaged in the egregious and debilitating discrimination and harassment against Ms. Hill continue to be employed at Vanderbilt with no consequences whatsoever for their actions and how it affected her, Ms. Hill remains on paid administrative leave, and has been denied a promotion she deserves, told that her pay will be cut significantly for no reason, and apparently no longer even has an office at the Plant where she has worked for 25 years.

71. The discrimination, mistreatment, harassment, and retaliation endured by Ms. Hill at Vanderbilt from 2018 through the present was directly and intentionally based on her gender, gender identity, and disability; when Ms. Hill presented at work as male, she had no problems – but as soon as she notified her superiors that she needed to transition, and then even worse when she returned to work from her gender-affirming surgeries and presented as female, she was constantly harassed and discriminated against by both superiors and subordinates without any reprimands.

72. Ms. Hill has been forced to endure a hostile work environment and retaliation for engaging in protected activity; the actions taken against her were and are continuing.

73. At all times pertinent hereto, Ms. Hill performed her job in a satisfactory manner; she is not aware of any reprimands, disciplinary actions, or any other findings of improper behavior or actions against her in her personnel file over the entire 25 years she has worked for Vanderbilt.

## COUNT ONE: DISCRIMINATION IN VIOLATION OF
## TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

74. Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein.

75. As a woman, Plaintiff is a member of a protected class covered by Title VII, 42 U.S.C. §2000e et seq.

76. At all relevant times, Plaintiff was an employee of Defendant and Defendant was employer as that term is defined by Title VII, 42 U.S.C. § 2000e et seq.

77. Defendant through its agents, representatives, and employees intentionally, willfully, and knowingly subjected Plaintiff to disparate treatment and created a hostile work environment which affected the terms and conditions of her employment in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.

78. As described in detail in this Complaint, Defendant subjected Plaintiff to disparate treatment when it, inter alia, discriminated against her based on her sex.

79. Defendant subjected Ms. Hill to disparate treatment because of her sex as compared to her similarly situated male colleagues, as well as compared to how they treated her prior to her transition from male-to-female.

80. The above-pled actions of Defendant constitute sex discrimination in violation of Title VII of the Civil Rights Act of 1964.

81. Ms. Hill's sex was a motivating factor in Defendant's decisions to take the above-pled discriminatory actions, even if her sex was not the only factor that motivated that decision.

82. The actions of Defendant in subjecting Ms. Hill to disparate treatment were willful, deliberate, and intended to cause her harm and/or were committed with reckless disregard for the

harm caused to Ms. Hill and were in derogation of her federally protected rights.

83. As a direct and proximate result of Defendant's said violation of Title VII, Ms. Hill has suffered damages, including emotional distress, inconvenience, loss of income and benefits, humiliation, and other indignities.

84. As a result of the above-pled violations of Title VII, Ms. Hill is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, punitive damages, front pay in lieu of reinstatement, reasonable attorney fees and costs and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

## COUNT TWO: RETALIATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

85. Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein.

86. At all relevant times, Ms. Hill was an "employee" of Defendant as that term is defined by Title VII, 42 U.S.C. § 2000e et seq.

87. Defendant was at all relevant times an "employer" as that term is defined by Title VII, 42 U.S.C. §2000e et seq.

88. During her employment with Defendant, Ms. Hill engaged in statutorily protected activity by, among other things, complaining of sex discrimination in violation of Title VII, and in filing a charge of discrimination with the EEOC.

89. Defendant, through its agents, representatives, and employees, engaged in actions and omissions constituting retaliation (as Ms. Hill engaged in a protected activities) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et seq.

18

90. As described in more detail in the above paragraphs, Defendant retaliated against Ms. Hill by, inter alia, putting her on forced administrative leave, notifying her that her compensation is being reduced, and refusing even to consider her for a promotion for which she was uniquely and highly qualified, all of which altered the terms and conditions of her employment and all of which would have dissuaded a reasonable worker from making or supporting a charge of discrimination.

91. Defendant lacked any legitimate justification for subjecting Ms. Hill to the retaliatory actions complained of above and/or any such purported legitimate justifications are mere pretext for retaliation.

92. The actions of Defendant in subjecting Ms. Hill to the adverse actions complained of above were willful, deliberate, and intended to cause Ms. Hill harm and/or were committed with reckless disregard for the harm caused to her thereby, and were in derogation of her federally protected rights.

93. As a direct and proximate result of Defendant's unlawful retaliatory conduct against Ms. Hill, and as a direct and proximate result of the violations of her federally protected rights, Ms. Hill has suffered harm, including but not limited to loss of benefits, a promotion, damage to her reputation, embarrassment, humiliation, and pain, emotional distress, and loss of enjoyment of life.

94. As a result of the above-pled violations of Title VII, Ms. Hill is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, punitive damages, front pay in lieu of reinstatement, reasonable attorney fees and costs and all other legal and equitable relief provided for by Title VII and all statutes providing for relief for violations of Title VII.

Case 3:21-cv-00747   Document 1   Filed 09/29/21   Page 19 of 28 PageID #: 19

## COUNT THREE: DISCRIMINATION IN VIOLATION OF
## TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

95.  Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein.

96.  Title IX prohibits discrimination against any person on the basis of sex in education programs or activities receiving federal financial assistance, and grants employees, like Ms. Hill here, a private right of action against a covered institution, like Vanderbilt University.  See 20 U.S. §1681(a).

97.  At all times relevant to this Complaint, Defendant was an educational institution that receives federal funding within the meaning of Title IX.

98.  At all times relevant to this Complaint, Ms. Hill was an employee of Defendant.

99.  At all times relevant to this Complaint, Ms. Hill, a female, was a member of a protected class who was qualified for the position of Plant Supervisor (as well as for the position of Plant Manager, for which Defendant refused even to consider her in good faith).

100.  Defendant treated Ms. Hill less favorably than similarly situated employees outside of her protected class, including how it treated her prior to her transition to female.

101.  The actions of Defendant, by and through its agents, representatives, and employees, constitute discrimination on the basis of sex in violation of Title IX and its implementing regulations.

102.  The actions of Defendant described above have directly and proximately caused, and continue to cause, Ms. Hill to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

103.  As a result of the above-pled violations of Title IX, Ms. Hill is entitled to recover lost

wages and economic benefits of her employment, compensatory damages for emotional distress, front pay in lieu of reinstatement, reasonable attorney fees and costs and all other legal and equitable relief provided for by Title IX and all statutes providing for relief for violations of Title IX.

## COUNT FOUR: RETALIATION IN VIOLATION OF
## TITLE IX OF THE EDUCATION AMENDMENTS OF 1972

104.  Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein.

105.  Title IX prohibits discrimination against any person on the basis of sex in education programs or activities receiving federal financial assistance, including retaliation against an employee, like Ms. Hill, who has complained of sex discrimination. See 20 U.S. §1681(a).

106.  Retaliation against an employee, like Ms. Hill, because that person has complained of sex discrimination is a form of intentional discrimination encompassed by Title IX, and for which Title IX grants a private right of action to employees against a covered institution, like Vanderbilt.

107.  At all times relevant to this Complaint, Defendant was an educational institution that receives federal funding within the meaning of Title IX.

108.  At all times relevant to this Complaint, Ms. Hill was an employee of Defendant.

109.  Ms. Hill engaged in protected activity by opposing treatment that she reasonably believed constituted unlawful discrimination under Title IX and its implementing regulations by making numerous complaints to her supervisor regarding the discriminatory treatment she suffered and by filing a complaint of sex discrimination against Defendant.

110.  Defendant was aware of Ms. Hill's protected activity.

111.  Defendant, by and through its agents, representatives, and employees, retaliated against Ms. Hill by subjecting her to adverse employment actions, including but not limited to placing her

on paid administrative leave because of her sex and gender identity.

112.  The actions of Defendant described above have directly and proximately caused, and continue to cause, Ms. Hill to suffer loss of income and other financial benefits, a loss of future professional opportunities and future income, pain and suffering, humiliation, personal embarrassment, and damage to her professional reputation.

113.  As a result of the above-pled violations of Title IX, Ms. Hill is entitled to recover lost wages and economic benefits of her employment, compensatory damages for emotional distress, front pay in lieu of reinstatement, reasonable attorney fees and costs and all other legal and equitable relief provided for by Title IX and all statutes providing for relief for violations of Title IX.

## COUNT FIVE: DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

114.  Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein.

115.  Ms. Hill is and, at all times relevant hereto, was a qualified individual with a disability as that term is defined under the ADA, 42 U.S.C. §12102(1), because she suffers from gender dysphoria, which substantially limits one or more of her major life activities, has a record of such impairments, and/or was regarded by Defendant as a person with such impairments.

116.  At all relevant times, Ms. Hill was able to perform the essential functions of her job with or without an accommodation.

117.  Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Ms. Hill by subjecting her to adverse employment actions, including but not limited to refusing her a reasonable accommodation for her disability, which constitutes unlawful disability discrimination against Ms. Hill in violation of the ADA.

22

118. Defendant acted in bad faith, willfully and wantonly disregarded, and/or in reckless disregard of, Ms. Hill's rights under the ADA.

119. As a direct and proximate result of Defendant's intentional discrimination, Ms. Hill has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

120. Defendant's actions have caused and will continue to cause Ms. Hill to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

121. Pursuant to the ADA, Ms. Hill is entitled to damages including lost compensation and lost benefits, front pay in lieu of reinstatement, compensatory damages, punitive damages, her attorney fees and costs of litigation, and all other relief recoverable under the ADA.

## COUNT SIX: RETALIATION IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

122. Plaintiff incorporates all of the foregoing paragraphs above as if set forth fully herein.

123. Ms. Hill engaged in statutorily protected activity by requesting a reasonable accommodation for her disability and by filing an EEOC Charge.

124. Defendant retaliated against Ms. Hill because she engaged in statutorily protected activity under the ADA, including, but not limited to requesting an accommodation for her disability.

125. The above-pled retaliatory conduct toward Ms. Hill constitutes unlawful retaliation against her in violation of the ADA.

126. Defendant acted in bad faith, willfully and wantonly disregarded Ms. Hill's rights under the ADA, and acted in reckless disregard for Ms. Hill's rights under the ADA.

23

127. As a result of Defendant's retaliatory conduct, Ms. Hill has suffered lost compensation and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

128. Pursuant to the ADA, Ms. Hill is entitled to damages including, back pay and lost benefits, reinstatement or front pay in lieu of reinstatement, compensatory damages, punitive damages, her attorney fees and costs of litigation, and all other relief recoverable under the ADA.

## COUNT SEVEN: DISCRIMINATION BASED ON DISABILITY IN VIOLATION OF THE REHABILITATION ACT OF 1973

129. Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein.

130. At all relevant times, Ms. Hill was a qualified individual with a disability as that term is defined under the Rehabilitation Act, because she suffers from gender dysphoria that substantially limits one or more of her major life activities, has a record of such impairments, and/or was regarded by Defendant as a person with such impairments.

131. At all relevant times, Ms. Hill was able to perform the essential functions of her job with or without an accommodation.

132. Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Ms. Hill by subjecting her to adverse employment actions including, but not limited to placing her on forced paid administrative leave because of her disability.

133. Defendant further discriminated against Ms. Hill by refusing to grant her a reasonable accommodation for her disability.

134. The above-pled discriminatory conduct toward Ms. Hill constitutes unlawful disability discrimination against Plaintiff in violation of the Rehabilitation Act of 1973.

24

135. Defendant acted in bad faith, willfully and wantonly disregarded, and/or in reckless disregard for, Ms. Hill'a rights under the Rehabilitation Act of 1973.

136. As a direct and proximate result of Defendant's intentional discrimination, Ms. Hill has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

137. Defendant's actions have caused and will continue to cause Ms. Hill to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

138. Pursuant to the Rehabilitation Act, Ms. Hill is entitled to damages including, back pay and lost benefits, front pay in lieu of reinstatement, compensatory damages, her attorneys' fees and costs of litigation, and all other relief recoverable under the Rehabilitation Act.

## COUNT EIGHT: RETALIATION IN VIOLATION OF THE REHABILITATION ACT OF 1973

139. Plaintiff incorporates the foregoing paragraphs above as if fully set forth herein.

140. Defendant retaliated against Ms. Hill because she engaged in statutorily protected activity under the Rehabilitation Act by requesting a reasonable accommodation, complaining of unlawful discrimination, and filing an EEOC charge.

141. The above-pled retaliatory conduct toward Ms. Hill constitutes unlawful retaliation against her in violation of the Rehabilitation Act.

142. Defendant acted in bad faith, willfully and wantonly disregarded Ms. Hill's rights under the Act and acted in reckless disregard for Ms. Hill's rights under the Rehabilitation Act.

143. As a result of Defendant's retaliatory conduct, Ms. Hill has suffered lost compensation

and other benefits of employment, emotional distress, inconvenience, loss of income, humiliation, and other indignities.

144.  Pursuant to the Rehabilitation Act, Ms. Hill is entitled to damages including, back pay and lost benefits, front pay in lieu of reinstatement, compensatory damages, her attorneys' fees and costs of litigation, and all other relief recoverable under the Rehabilitation Act.

## COUNT NINE: DISCRIMINATION IN VIOLATION OF
## THE TENNESSEE HUMAN RIGHTS ACT

145.  Plaintiff incorporates all the foregoing paragraphs above as if fully set forth herein.

146.  At all relevant times, Ms. Hill was a qualified individual with a disability as that term is defined under the Tennessee Human Rights Act, because she suffers from gender dysphoria that substantially limits one or more of her major life activities, has a record of such impairments, and/or was regarded by Defendant as a person with such impairments.  T.C.A. §4-21-102.

147.  At all relevant times, Ms. Hill was able to perform the essential functions of her job with or without an accommodation.

148.  Defendant is an employer within the meaning of the Tennessee Human Rights Act. T.C.A. §4-21-102.

149.  Defendant, by and through its agents, representatives, and employees, intentionally discriminated against Ms. Hill by subjecting her to adverse employment actions including, but not limited to placing her on paid administrative leave because of her disability.

150.  Defendant further discriminated against Ms. Hill by refusing to grant her a reasonable accommodation for her disability in the form of offering her a different, comparable position within the University, with the same pay, pay grade, and benefits, particularly since jobs were available to

26

which Ms. Hill could be transferred.

151.  The above-pled discriminatory conduct toward Ms. Hill constitutes unlawful disability discrimination against her in violation of the Tennessee Human Rights Act.

152.  Defendant acted in bad faith, willfully and wantonly disregarded, and/or in reckless disregard for, Ms. Hill's rights under the Tennessee Human Rights Act.

153.  As a direct and proximate result of Defendant's intentional discrimination, Ms. Hill has suffered out of pocket losses and has been deprived of job-related economic benefits, including income in the form of wages and other benefits, all in an amount to be established at trial.

154.  Defendant's actions have caused and will continue to cause Ms. Hill to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, and other non-pecuniary losses, all in an amount to be established at trial.

155.  Pursuant to the Tennessee Human Rights Act, Ms. Hill is entitled to damages including, back pay and lost benefits, front pay in lieu of reinstatement, compensatory damages, her attorney fees and costs of litigation, and all other relief recoverable under the Tennessee Human Rights Act.

WHEREFORE, PREMISES CONSIDERED, Ms. Hill prays for the following relief:

1.  That this matter be filed in this Court, that proper process issue and be served on the Defendant, and that Defendant be required to respond within the time allowed by law.

2.  That this matter be tried before a jury of 12.

3.  That upon a hearing, Defendant be found to have violated Title VII of the Civil Rights Act of 1965 (both in discriminating and retaliating against Ms. Hill based on her sex), Title IX of the Education Amendments of 1972 (both in discriminating against and retaliating against Ms. Hill based on her sex), the Americans with Disabilities Act (both in discriminating against and retaliating

27

against Ms. Hill based on her disability), the Rehabilitation Act of 1973 (both in discriminating against and retaliating against Ms. Hill based on her disability) , and the Tennessee Human Relations Act (both in discriminating against and retaliating against Ms. Hill based on her sex.

4.  That upon a hearing, Ms. Hill be awarded a judgment for back pay, lost benefits, and other pecuniary and economic losses caused by Defendant's unlawful conduct.

5.  That upon a hearing, Plaintiff be awarded a judgment for pain and suffering, emotional distress, mental anguish, loss of enjoyment of life, punitive damages, and other non-pecuniary losses.

6.  That upon a hearing, Plaintiff be awarded a judgment for front pay in lieu of reinstatement.

7.  That Plaintiff be awarded a judgment for the reasonable attorney fees and costs she has incurred in being forced to pursue this action, with pre- and post-judgment interest thereon.

8.  That Plaintiff be awarded such other and further relief to which she is entitled.

Respectfully submitted,

/s/ Thomas J. Mew (by ARR w/permission)
Thomas J. Mew (GA bar #503447)
BUCKLEY BEAL, LLP
600 Peachtree Street, N.E., Suite 3900
Atlanta, Georgia 30308
404/920-0348
tmew@buckleybeal.com

(Admission pro hac vice being filed)

/s/ Abby R. Rubenfeld
Abby R. Rubenfeld (B.P.R. #6645)
RUBENFELD LAW OFFICE, PC
202 South Eleventh Street
Nashville, Tennessee  37206
615/386-9077
arubenfeld@rubenfeldlaw.com

/s/ John P. Nefflen (by ARR w/ permission)
John P. Nefflen (B.P.R. #20226)
SHACKLEFORD, BOWEN, McKINLEY &
Norton, LLP
1 Music Circle South, Suite 300
Nashville, Tennessee 37203
615/850-2295
jnefflen@shackelford.law

Attorneys for Plaintiff Olivia Hill

28