**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| **OLIVIA HILL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Civil Action No.  3:21-cv-00747** |
| | ) | |
| **vs.** | ) | **District Judge Eli J. Richardson** |
| | ) | **Magistrate Judge Jeffery S. Frensley** |
| **VANDERBILT UNIVERSITY,** | ) | |
| | ) | **JURY DEMAND** |
| **Defendant.** | ) | |

**DEFENDANT VANDERBILT UNIVERSITY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION
TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Vanderbilt University ("Vanderbilt" or the "University") moves to dismiss Plaintiff Olivia Hill's ("Hill") First Amended Complaint for Relief. Hill's addition of a few key words and "allegations" does not change the fact that each of Hill's federal and state law claims are time-barred and, therefore, fail as a matter of law. Neither do Hill's most recent "factual allegations" sufficiently set forth and plead the elements of her Title VII and Title IX claims. Finally, Hill's Title IX claims are preempted by her Title VII claims, and cannot be asserted here. Vanderbilt's Motion to Dismiss Plaintiff's First Amended Complaint should be granted with prejudice.

## I.        INTRODUCTION

In all of its operations, Vanderbilt strives to be a leading academic institution that places equity, diversity, and inclusion among its highest priorities to ensure that the University is a welcoming and inclusive environment for all the members of its campus community, including its employees. Vanderbilt is an Equal Employment Opportunity and Affirmative Action Employer and has an explicit Non-Discrimination Policy. Vanderbilt does not discriminate against individuals on the basis of their race, sex, sexual orientation, gender identity, gender expression,

religion, color, national or ethnic origin, age, disability, military service, or genetic information in its administration of educational policies, programs, or activities; admissions policies; scholarship and loan programs; athletic or other University-administered programs; or employment. Equal Opportunity and Affirmative Action, July 28, 2016, https://hr.vanderbilt.edu/policies/equal-opportunity.php.

Vanderbilt takes very seriously the allegations in Hill's First Amended Complaint. But for the reasons discussed herein, Hill's federal and state law claims must be dismissed because they are time-barred and/or simply do not set forth a claim for which relief can be granted.

## II. FACTUAL BACKGROUND[1]

### A. Vanderbilt's Commitment to Diversity, Inclusion, and LGBTQIA+ Employees

To promote and foster an inclusive campus community, Vanderbilt offers and encourages employees to participate in several University-sponsored employee groups and employee assistance programs, to avail themselves of the University's offices for diversity and inclusion, and its resources for individuals identifying as LGBTQIA+. Vanderbilt fosters and supports employee-led and facilitated Employee Affinity Groups ("EAGs") that provide a space for employees sharing common interests, backgrounds, identities, and bonds to connect and cultivate a more inclusive campus community. Equity, Diversity, and Inclusion, Employee Affinity Groups, https://www.vanderbilt.edu/diversity/employee-affinity-groups/ (last visited Oct. 13, 2021). Among the University's many EAGs is the LGBTQIA+ Affinity Group, which regularly hosts meetings to provide resources to LGBTQIA+ employees and allies, and the Disabilities and

---

[1] Vanderbilt disputes many of Hill's allegations and will set forth facts to do so at the appropriate time in this litigation. But because, on a motion to dismiss, the Court must accept all well-pled factual allegations as true, *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012), Vanderbilt recites Hill's allegations as pled in the First Amended Complaint.

Chronic Health Conditions Affinity Group, providing community for employees who identify as having visible or invisible disabilities. *Id.* Vanderbilt's many diversity and inclusion initiatives are nationally recognized for protecting the University's employees and contractors, promoting diversity, and enforcing nondiscrimination laws. *See e.g. Frist Center for Autism and Innovation recognized by American Association for Access, Equity and Diversity with 2021 Edward M. Kennedy Community Service Award*, https://news.vanderbilt.edu/2021/09/15/frist-center-for-autism-and-innovation-recognized-by-the-american-association-for-access-equity-and-diversity-with-2021-edward-m-kennedy-community-service-award/ (last visited Nov. 17, 2021); U.S. Dept. of Labor, Office of Federal Contract Compliance Programs, *Sample Disability and Inclusion Programs*, https://www.dol.gov/agencies/ofccp/compliance-assistance/outreach/resources/sample-disability-inclusion-programs (last visited Oct. 13, 2021).

Central to Vanderbilt's diversity and inclusion initiatives is the Office of Lesbian, Gay, Bisexual, Transgender, Queer, and Intersex Life ("LGBTQI Life"). LGBTQI Life serves all members of Vanderbilt's campus community through programming, resources, and a full-time staff. *See* Lesbian, Gay, Bisexual, Transgender, Queer, & Intersex Life, https://www.vanderbilt.edu/lgbtqi/ (last visited Oct. 13, 2021). LGBTQI Life also provides a robust collection of resources for transgender, trans, gender-variant, non-binary, agender, other non-cisgender people, and allies at Vanderbilt, including resources for name changes and preferred pronoun designation, housing, and all-gender restrooms. *See Trans@VU*, https://www.vanderbilt.edu/lgbtqi/transvu (last visited Oct. 13, 2021). LGBTQI Life's programming and resources are available to all members of Vanderbilt's community, including faculty, staff, and alumni.

In addition to LGBTQI Life, which provides a wealth of resources and support for all members of the Vanderbilt community interested and focused on LGBTQI life, the Vanderbilt LGBT Policy Lab ("the Policy Lab") connects researchers, students, and community members who are interested in the causes and consequences of LGBT policies. The Policy Lab team draws on expertise from economics, sociology, political science, demography, religious studies, divinity studies, medicine, health services research, public health, law, and education to advance understandings of how social and policy contexts impact the lives of LGBTQIA+ people.

Because the University recognizes the specific need for inclusive medical care for transgender employees, Vanderbilt has opted into hormone therapy and gender reassignment surgery benefits through its employee health insurance providers. *See Trans Health on Campus*, *Vanderbilt Employee Trans Health Coverage*, https://www.vanderbilt.edu/lgbtqi/transvu/trans-health-on-campus (last visited Oct. 13, 2021). Vanderbilt also provides access to counseling and therapy around gender dysphoria, transitioning, or any other topic regarding gender identity through its Employee Assistance Program. *Id.* Information about each of these resources is readily available to Vanderbilt's campus community and the public.

Vanderbilt expects and requires each of its faculty, staff, and employees to abide by its non-discrimination policies, including its Equal Opportunity and Affirmative Action Policy and Non-Discrimination Policy. Equal Opportunity and Affirmative Action, July 28, 2016, https://hr.vanderbilt.edu/policies/equal-opportunity.php. The Equal Opportunity and Access Office ("EOA"), formerly called the Equal Employment Opportunity ("EEO") office or the Equal Opportunity, Affirmative Action, and Disability Services Department ("EAD"), is responsible for investigating and resolving complaints of discrimination, harassment, and related retaliation within Vanderbilt, whether the complaints originate internally or externally. University officials base

employment decisions on the principles of equal employment opportunity consistent with the University's intent to achieve the goals outlined in its affirmative action programs.

Vanderbilt takes seriously its responsibility and commitment to creating a campus community that is inclusive, diverse, and operates in accordance with federal and state anti-discrimination laws. Vanderbilt supports, champions, and values its employees of all creeds, including those who, like Hill, transition and/or choose to express themselves or identify as a gender other than the one assigned at birth.

## B.    Hill's Factual Allegations

According to the First Amended Complaint, for the last 25 years, starting in January 1996, Hill has been employed in Vanderbilt's Cogeneration Plant or "Power Plant," housed within Vanderbilt's Facilities Department, in various capacities, including as Lead Person, Control Room Operator, High Voltage Electrician, Controls Specialist, Maintenance, Peabody Diesel Plant Supervisor/Diesel Mechanic, and Acting Plant Manager. (1st Am. Compl. [Doc. 24] ¶¶ 1, 3, 7, 23.) In late 2017, Hill's doctor diagnosed her with gender dysphoria and recommended that she "begin living as a woman and that she receive medical treatment to transition to female, her proper gender identity." (*Id.* ¶ 24.) In January 2018, Hill met with a counselor through Vanderbilt's Employee Assistance Program to "develop a plan for coming out to Vanderbilt as transgender" and provide notice of her intent to start expressing and presenting herself as female. (*Id.* ¶ 27.) Between May and June 2018, Hill met with various leaders at Vanderbilt, including her supervisors, Mitch Lampley, Director of Engineering and Technical Support for Plant Operations, Tim Cook, Power Plant Manager, and Mark Petty, Assistant Vice Chancellor for Plant Operations, to inform them of her intended transition.  (*Id.* ¶¶ 28-29.)

Hill alleges that in August 2018, her supervisors and other employees and contractors in the Power Plant made statements and engaged in discriminatory conduct that does not comport with Vanderbilt's non-discrimination policies or federal and state anti-discrimination laws. In August 2018, her "direct supervisor," Cook, allegedly used the words "it," "trans freak," and "weirdo" to discuss Hill and her transition. (1st Am. Compl. ¶ 30.) Hill alleges that she complained about this conduct to Lampley, who responded that he would speak with Cook. (*Id.* ¶ 31.) Hill alleges that Lampley did not speak with Cook. (*Id.*)

Starting February 15, 2019, Hill took a leave of absence to undergo gender-affirming surgeries. (1st Am. Compl. ¶ 34.) She alleges in late April 2019, while on leave, she learned that Cook referred to her as "it" in meetings. (*Id.* ¶ 35.) She alleges that she complained to Lampley about this conduct. (*Id.*) Hill admits that Lampley said he would speak to Cook and "that he had been in discussion with Assistant Vice Chancellor Petty for a way to handle this continuing problem." (*Id.* ¶ 35.)

On May 20, 2019, Hill returned to work. (1st Am. Compl. ¶ 36.) Hill alleges that upon her return, she was "mocked by her superiors, immediately treated differently by both superiors and subordinates, avoided by co-workers who would not speak to her, and found that people would stop talking and leave when she walked into a room – none of which was addressed by her superiors." (*Id.*) Hill claims that Cook stopped including her in meetings and intentionally withheld information relevant to Hill's job duties. (*Id.* ¶¶ 37-38.) For their part, Lampley and Petty allegedly reprimanded Hill for her complaints about Cook's conduct and engaged in their own discriminatory conduct, using male pronouns and Hill's former male name despite Hill's formal name change. (*Id.* ¶¶ 39-41.) Hill alleges that this conduct caused vendors, contractors, and

employees who reported to Hill to treat her in a similar fashion, all without intervention or reprimand from her supervisors. (*Id.* ¶¶ 42-49.)

Hill also alleges that she experienced "basic sex discrimination" while working in the Power Plant because the Power Plant has no women's restroom or locker room and her supervisors declined to convert one of the existing restrooms into a women's restroom. (1st Am. Compl. ¶¶ 51-53.)

On November 22, 2019, Hill contacted Cara Turtle Bell, the Director of Project Safe, Vanderbilt's Center for Sexual Misconduct Prevention and Response, to report her supervisors and colleagues' conduct. (1st Am. Compl. ¶ 55.) Bell directed Hill to Anita J. Jenious, the Director of Vanderbilt's Equal Employment Opportunity ("EEO") office. (*Id.* ¶ 56.) On December 4, 2019, Hill, Bell, Jenious, and Chris Purcell, then Director of LGBTQI Life, met so that Hill could make a formal complaint about her supervisors' conduct. (*Id.* ¶ 57.) Hill admits that Vanderbilt conducted an internal review of her allegations and determined that "there was no violation of Vanderbilt's nondiscrimination or anti-harassment policies." (*Id.* ¶¶ 60-61.) Notwithstanding her admission that an investigation and review of her claims took place, Hill claims the University's efforts were "a sham." (*Id.*) Starting in December 2019, while Vanderbilt investigated her complaint, Hill was placed on administrative leave ***with*** pay. (*Id.* ¶ 58.)

In April 2021, while still on administrative leave with pay, Hill applied for the Power Plant's Plant Manager position, recently vacant after Cook's resignation from Vanderbilt. (1st Am. Compl. ¶¶ 64-65.) Hill admits that Vanderbilt selected her to interview for the position. (*Id.* ¶ 66.) Ultimately, Hill was not extended an offer to fill the Plant Manager role. (*Id.*)

After filing two charges of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") (1st Am. Compl. ¶ 63, 67), Hill now asserts claims against Vanderbilt for:

(1) discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) discrimination in violation of Title IX; (4) retaliation in violation of Title IX; (5) discrimination based on disability in violation of the ADA; (6) retaliation in violation of the ADA; (7) discrimination in violation of the Rehabilitation Act; (8) retaliation in violation of the Rehabilitation Act; (9) discrimination in violation of the Tennessee Disability Act; and (10) discrimination in violation of the Tennessee Human Rights Act. But for the reasons set forth below, each of Hill's claims fail, or, alternatively, should be narrowed in scope, because they are based on time-barred facts and occurrences. Further, Hill fails to state a plausible claim for relief for her Title VII and Title IX claims. For these reasons, this Court should grant Vanderbilt's motion to dismiss.

### III.   ARGUMENT AND CITATION TO AUTHORITY

#### A.   Standard of Review

"[P]leadings must be something more than an ingenious exercise in the conceivable." *U.S. v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 688 (1973). The Federal Rules demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must allege facts that "'state a claim to relief that is plausible on its face' and that, if accepted as true, are sufficient to 'raise a right to relief above the speculative level.'" *Handy Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. The complaint "must thus

'contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory.'" *Handy Clay*, 695 F.3d at 538.

To be "plausible on its face," a complaint must contain enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tumminello v. Father Ryan High Sch., Inc.*, No. 3:15-cv-00684, 2015 WL 13215456, at *2 (M.D. Tenn. Dec 7, 2015) (citing *Iqbal*, 556 U.S. at 678). "Plausibility requires 'more than a sheer possibility that a defendant has acted unlawfully.'" *Id.* "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.*

While Hill's federal and state law claims, to the extent they are based on circumstantial (instead of direct) evidence, are typically subject to the familiar burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), that framework is "inapplicable on a Rule 12(b)(6) motion to dismiss." *Holland v. LG Electronics U.S.A., Inc.*, No. 3:20-cv-00706, 2021 WL 130529, at *2 (M.D. Tenn. Jan. 14, 2021). Even so, Hill "must still satisfy the plausibility requirement . . . to survive a motion to dismiss." *Id.* at *4; *see also Holland*, 2021 WL 130529, at *4. With these principals in mind, Hill's First Amended Complaint should be dismissed with prejudice.

## B. Each of Hill's Claims Must Be Dismissed, or, in the Alternative, Narrowed in Scope Because They Are Time-Barred

Hill's federal and state law claims are predicated on the same set of facts—alleged acts of discrimination, harassment, and retaliation stemming from August 2018. That fact is fatal to each of Hill's claims. Statute of limitations arguments are properly addressed at the motion to dismiss stage when the relevant dates are set forth unambiguously in the complaint. *See e.g. Webster v. Sontara Old Hickory, Inc.*, No. 3:20-cv-00685, 2021 WL 1857344 *2 (M.D. Tenn. May 10, 2021)

(Richardson, J.) ("But, sometimes the allegations in the complaint affirmatively show that the claim is time-barred. When that is the case . . . dismissing the claim under Rule 12(b)(6) is appropriate."). Because Hill's First Amended Complaint makes very specific allegations about the dates on which she experienced discriminatory acts at the hands of her supervisors, the dates she complained about her supervisors' conduct, and when her complaints went unaddressed, this Court can conclude that Hill's claims are time-barred and warrant dismissal.

   i.   *Tennessee's one-year statute of limitations applies to Plaintiff's Title IX, ADA, Rehabilitation Act, Tennessee Disability Act, and Tennessee Human Rights Act claims.*

Title IX, the ADA, and the Rehabilitation Act do not set forth their own statute of limitations. Because these statutory provisions do not contain their own statute of limitations, Hill's claims are governed by Tennessee's statute of limitations for personal injury claims. *See Wilson v. Garcia*, 471 U.S. 261, 267 (1985); *Haley v. Clarksville-Montgomery Cnty. Sch. Sys.*, 353 F. Supp. 3d 724, 733 (M.D. Tenn. 2018); *McCormick v. Miami Univ.*, 693 F.3d 654, 663 (6th Cir. 2012); *Sorey v. YRC, Inc.*, No. 3:11-cv-0859, 2012 WL 38255, at *3 (M.D. Tenn. Jan. 6, 2012).

Tennessee law sets out a one-year statute of limitations for all personal injury claims. Tenn. Code Ann. § 28-3-104(a)(1). Tennessee's federal courts have long held that this one-year statute of limitations applies to claims asserted under Title IX, the ADA, and Section 504 of the Rehabilitation Act. *Haley*, 353 F. Supp. 3d at 733 (applying the one-year statute of limitations to Title IX claims); *Sorey*, 2012 WL 38255, at * 3 (applying the same to Rehabilitation Act claims); *Pointer v. Corr. Corp. of Am.*, No. 12-1292, 2013 WL 4505697, at *1 (W.D. Tenn. Aug. 22, 2013) (applying the same to ADA claims); *Lucas v. Memphis City Sch. Bd. of Educ.*, No. 06-2234 B, 2007 WL 1774947, at *2 (W.D. Tenn. June 18, 2007) (same); *Miller v. City of Knoxville*, No. 3:03-

CV-574, 2006 WL 2506229, at *3 (E.D. Tenn. Aug. 29, 2006) (applying the one-year statute of limitations to "claims for personal injuries and federal civil rights").

Hill's state law claims under the Tennessee Disability Act and Tennessee Human Rights Act are likewise subject to a one-year statute of limitations. *Gleason v. Food City 654*, No. 3:13–CV–712–PLR–HBG, 2015 WL 1815686, *4 (E.D. Tenn. Apr. 22, 2015) ("To the extent that Gleason is asserting a claim under the Tennessee Disability Act (TDA), it is time-barred because the statute of limitations for bringing such an action is one year") (citing Tenn. Code Ann. § 4-21-311(d) ("A civil cause of action under this section shall be filed. . . within one (1) year after the discriminatory practice ceases. . . .")); *Middlebrook v. City of Bartlett*, 341 F. Supp. 2d 950, 958 (W.D. Tenn. 2003) ("The statute of limitations for a claim brought under the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, is one year.") (citing Tenn. Code Ann. § 29-20-305(b)). This Court, therefore, must assess Hill's claims, and their ability to survive a motion to dismiss, against this one-year statute of limitations.

> ii. *Hill's federal and state law claims accrued when she knew or had reason to know of her alleged injuries, barring her claims here.*

"[F]ederal law governs the question of when [the] limitations period begins to run. The statute of limitations commences to run when the plaintiff knows or has reason to know of the injury which is the basis of [her] action." *Sevier v. Turner*, 742 F.2d 262, 272-73 (6th Cir. 1994). "A plaintiff has reason to know of [her] injury when [she] should have discovered it through the exercise of reasonable diligence." *Id.* Here, the one-year statute of limitations applicable to Hill's federal and state law claims has run and lapsed.

Hill alleges that she was first subjected to discriminatory conduct at the hands of her supervisors in August 2018 when she learned that Cook "had been discussing her transition with engineers and contractors with whom she works" and used the words "'it,' 'trans freak,' and

'weirdo'" to describe her. (1st Am. Compl. ¶ 30.) Hill alleges that she complained about Cook's conduct to Lampley, but Lampley "did not in fact ever speak to Mr. Cook because he said he 'did not know how.'" (*Id.* ¶ 31.) Thus, Hill was on notice of her supervisors' allegedly discriminatory and harassing behavior and her supervisors' alleged refusal to correct the behavior as early as August 2018. Taking the facts as Hill pleads them, the statute of limitations on her Title IX, ADA, Rehabilitation Act, Tennessee Disability Act, and Tennessee Human Rights Act claims began to run in August 2018. Hill did not file her first charge of discrimination with the EEOC until September 25, 2020—more than ***two*** years later. (*Id.* ¶ 63.) Thus, each of Hill's federal and state law claims, to the extent they stem from this August 2018 event, are time-barred and should be dismissed.

The later events Hill describes in her First Amended Complaint do not change this outcome. Hill alleges that in April 2019, Cook referred to her as "it" in meetings. (1st Am. Compl. ¶ 35.) Lampley allegedly took no action and instead told Hill that he "would 'try' to speak to Mr. Cook." (*Id.*) In May 2019, upon returning from her gender-affirming surgeries, Hill was allegedly "mocked by her superiors, immediately treated differently by both superiors and subordinates, avoided by co-workers who would not speak to her, and found that people would stop talking and leave when she walked into a room." (*Id.* ¶ 36.) Hill claims this conduct went unaddressed by her supervisors. (*Id.*) Each of these incidents, and her supervisors' alleged failure to act, similarly put Hill on notice of her injury and alerted her of her need to seek relief administrative relief.[2] Still, Hill did not file her first EEOC charge until September 2020—more than a year after the latest of

---

[2] To the extent Hill argues that Vanderbilt's failure to promote her to the Plant Manager role constituted a separate discriminatory and/or retaliatory act, Hill's claims still fail because she was on notice of the injuries that form the basis of her claims as early as August 2018 and, for the reasons noted below, Vanderbilt's alleged continuing violations and discriminatory conduct cannot save her claims.

these events. Hill's federal and state law claims are still, therefore, time-barred and subject to dismissal.

      iii.    *Hill's federal and state law claims are likewise time-barred because they were not timely filed with the EEOC.*

But even if this Court finds that Tennessee's one-year statute of limitations does not apply (it does), each of Hill's federal and state law claims, including her claim under Title VII, are time-barred under the filing provisions set forth in 42 U.S.C. § 2000e-5(e)(1). "Title 42 U.S.C. §2000e-5(e)(1) is a charge filing provision that 'specifies with precision' the prerequisites that a plaintiff must satisfy before filing suit." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 109. "An individual must file a charge within the statutory time period and serve notice upon the person against whom the charge is made." *Id.* "In a State that has an entity with the authority to grant or seek relief with respect to the alleged unlawful practice, an employee who initially files a grievance with that agency must file the charge with the EEOC within 300 days of the employment practice; in all other States, the charge must be filed within 180 days." *Id.* "A claim is time barred if it is not filed within these time limits." *Id.* As noted throughout this motion, Hill filed her first charge of discrimination with the EEOC on September 25, 2020, more than two years after she alleges that she first experienced (and reported) her supervisors' allegedly discriminatory conduct. Her remaining allegations refer to conduct that allegedly took place in April and May 2019, more than a year before she filed her first EEOC charge. Thus, to the extent that Hill's claims stem from this conduct, they were not timely filed with the EEOC and are time-barred. Vanderbilt's motion to dismiss, therefore, should be granted.

      iv.    *Equitable tolling and/or the continuing violations doctrine do not salvage Hill's federal and state law claims.*

Hill's First Amended Complaint attempts to soften her clear admission that she was on notice of her injury in August 2018 with strategically placed allegations that her supervisors' "hostility" is "continuing and ongoing." (1st Am. Compl. ¶ 33; *see also id.* ¶ 71 (alleging the treatment Hill "endured. . . began in 2018 and continues through the present").) Even so, her claims cannot survive Vanderbilt's motion to dismiss because the doctrines of equitable tolling and/or the continuing violation doctrine do not apply here. "The general rule is that courts in this circuit will not extend a statute of limitations 'by even a single day.'" *Haley*, 353 F. Supp. 3d at 734. And as the U.S. Supreme Court cautions, federal courts should apply equitable tolling "sparingly." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

Simply put, equitable tolling cannot save Hill's claims. Courts consider five factors when deciding whether equitable tolling applies to an otherwise time-barred claim: "(1) the lack of notice of the filing requirement; (2) the lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) the petitioner's reasonableness in remaining ignorant of the legal requirement for filing [her] claim." *Haley*, 353 F. Supp. 3d at 734 (citing *Bullington v. Bedford Cnty., Tenn.*, 905 F.3d 467, 470 (6th Cir. 2018)). The First Amended Complaint does not allege facts concerning any of these factors. Nor does the First Amended Complaint allege that Hill's supervisors, or Vanderbilt for that matter, took any action to prevent Hill from asserting her claims before the EEOC or filing this action. Instead, the First Amended Complaint alleges that Hill knew she had been treated inequitably by her supervisors and did not seek relief from Vanderbilt officials until over a year later. (1st Am. Compl. ¶¶ 41, 55.) Because Hill was on notice of her claims and pleads no facts alleging she was reasonably ignorant of her duty to file this action with the EEOC or was somehow prevented from

doing so, equitable tolling should not apply to extend the life of Hill's Title IX, ADA, Rehabilitation Act, Tennessee Disability Act, and Tennessee Human Rights Act claims.

Likewise, the continuing violations doctrine does not change the outcome here. As an initial matter, the Sixth Circuit "has observed an 'extreme' reluctance to apply the doctrine outside of the Title VII context." *Haley*, 353 F. Supp. 3d at 735 (citing *LRL Props. v. Portage Metro. Housing Auth.*, 55 F.3d 1097, 1105 (6th Cir. 1995)). This Court should similarly decline to apply the continuing violation doctrine to Hill's non-Title VII claims. But even if the continuing violations doctrine applies, Hill's allegations do not trigger it. "'[D]iscrete acts,' including adverse employment events such as 'termination, failure to promote, denial of transfer, or refusal to hire,' are not actionable under a continuing violations theory if they are otherwise time-barred." *Id.* at 735 (citing *Nat'l R.R. Passenger Corp*, 536 U.S. at 113-14).

To avoid application of the statute of limitations and dismissal of her claims, Hill alleges throughout the Amended Complaint that she was subject to ongoing "hostility." But such "hostility" alone does not trigger the continuing violation doctrine and toll the statute of limitations applicable to Hill's claims. To the extent Hill is asserting a hostile work environment claim, "'[t]o establish a continuing violation, [a] plaintiff must first produce evidence of a 'current' violation taking place within the limitations period. Second, [a] plaintiff must show that the current violation ... is indicative of a pattern of similar discriminatory acts continuing from the period prior to the limitations period.'" *El-Zabet v. Nissan North America, Inc.*, 211 Fed. App'x 460, 464 (quoting *Baptist Hosp. of East Tenn.*, 302 F.3d 367, 276 (6th Cir. 2002)). Hill does not allege that she has experienced "current" acts of hostility that took place within the limitations period. Indeed, the latest act of hostility Hill describes in the Amended Complaint took place on November 21, 2019, when Petty allegedly called Hill into his office and directed Hill to re-write portions of the letter

she planned to submit in support of a rainbow crosswalk on Vanderbilt's campus. (1st Am. Compl. ¶ 54.) Hill filed her first Charge of Discrimination on September 25, 2020, 309 days after this incident. Thus, at the very least Hill's federal and state law claims fail as a matter of law because even this latest event falls outside of the statute of limitations for her claims. The continuing violations doctrine does not apply, and Vanderbilt's motion to dismiss should be granted.

## C.     Hill's Title VII Discrimination and Retaliation Claims Fail as a Matter of Law Because Hill's Factual Allegations Do Not Plausibly Set Forth the Elements of Each Claim

   i.     *Hill's Title VII discrimination claim does not plausibly plead that she suffered an adverse employment decision, that she was replaced by someone outside of her protected class, or that she was treated differently than similarly-situated non-protected employees.*

Hill alleges that she was subjected to disparate treatment and discriminated against because of her sex. Ultimately, to state a *prima facie* case of Title VII sex discrimination, Hill must show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for her position; and (4) she was replaced by someone outside of the protected class or was treated differently than similarly-situated non-protected employees." *Singer v. Univ. of Tenn. Health Sciences Ctr.*, No. 2:19-cv-02431, 2021 WL 3412445, at *3 (W.D. Tenn. Aug. 4, 2021). Assuming, inter alia, that Hill is a member of a protected class and that she was qualified for her position, she does not plausibly plead that she suffered an adverse employment decision, that she was replaced by someone outside of her protected class, or that she was treated differently than similarly-situated non-protected employees.

Hill claims that Vanderbilt's decision to place her on administrative leave and change in the classification of her employment were adverse employment actions. But Hill admits that Vanderbilt placed her on *paid* administrative leave for the entire duration of the University's investigation into her claims (1st Am. Compl. ¶¶ 58, 60.) Though Hill speculates that her leave

"punished" her for making complaints about her supervisors' conduct and that this punishment was exacerbated by the loss of "significant overtime pay" (*id.* ¶ 58), Vanderbilt's decision to grant her paid leave belies any argument that she was punished. *Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (holding that an employee's placement on paid administrative leave pending the outcome of an investigation is not an adverse employment action); *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 594 (6th Cir. 2007) (same). As courts in this Circuit note, "'[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" *Tumminello*, 2015 WL 13215456, at *2. Hill's allegations only present "a sheer possibility that a defendant has acted unlawfully.'" *Id.* Because Hill does not state a plausible claim that Vanderbilt took an adverse employment action against her, her Title VII claim should be dismissed.

Nor does Hill plausibly plead that she was replaced by someone outside of her protected class or that she was treated differently than similarly-situated non-protected employees. While Hill alleges that a "male outside contractor from Mid-South Instrumentation" is fulfilling her job duties while she is on administrative leave (1st Am. Compl. ¶ 62), Hill does not—and cannot—plead that she was *replaced* by said contractor. A temporary or interim appointment while Hill is on administrative leave does not constitute a replacement to plausibly state a claim for Title VII discrimination. *See Bush v. Am. Honda Motor Co., Inc.*, 227 F. Supp. 2d 780, 791 (S.D. Ohio 2002) (denying summary judgment on the plaintiff's Title VII claim where, among other things, the employee that allegedly replaced the plaintiff "was not hired into the position . . . on anything other than an interim basis"); *Sheets v. Nat'l Computer Sys., Inc.*, No. Civ 3-99-CV-30091, 2000 WL 33364120, at *6 (S.D. Iowa Dec. 7, 2000) ("The limited case law in this area suggests the Court should look to the permanent replacement employee, not the temporary fill-in."). Finally,

Hill does not plausibly plead that she was treated differently than similarly-situated non-protected employees. In fact, Hill pleads no facts regarding how other employees in the Power Plant were treated by Cook, Lampley, and Petty. Because Hill does not plausibly plead these critical elements of her Title VII discrimination claim, this claim should be dismissed.

> ii.    *Hill's Title VII retaliation claim does not plausibly plead that Vanderbilt took any "materially adverse" action or that a causal connection exists between any alleged adverse employment action and her complaints.*

To state a claim for retaliation under Title VII, Hill must ultimately prove that she "(1) engaged in activity protected by Title VII; (2) the defendant knew of plaintiff's exercise of activity protected by Title VII; (3) the defendant took an action that was 'materially adverse' to plaintiff; and (4) a causal connection existed between the protected activity and the materially adverse action." *Courts v. Correct Care Solutions, LLC*, No. 3:17–00944, 2018 WL 2336377, at * 9 (M.D. Tenn. May 23, 2018). "'Materially adverse' in the context of the second element means the action 'might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* "The fourth element 'requires proof of so-called 'but for' causation, meaning that the plaintiff must furnish evidence that the 'unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer.'" *Id.* Stated differently, "[t]o plausibly allege a causal connection between protected activity and an adverse action, a plaintiff must put forth some fact creating an inference that the adverse action would not have occurred without the employee first engaging in protected activity. *Sizemore v. Edgewood Bd. of Educ.*, No. 1:19-cv-555, 2020 WL 1904726, *8 (S.D. Oh. Apr. 17, 2020) (citing *Nguyen v. City of Cleveland*, 229 F.3d 559, 563 (6th Cir. 2000)).

As an initial matter, Hill's First Amended Complaint does not plausibly plead any facts to support a claim that *Vanderbilt* took any action that would have dissuaded a reasonable worker

from complaining about her supervisors' actions. As Hill admits, her complaints to individuals outside of the Power Plant, including Cara Tuttle Bell, the Director of Project Safe, and Anita Jenious, the Director of Vanderbilt's Equal Employment Opportunity Office, were heard, reduced to a formal complaint, and escalated for a formal investigation. (1st Am. Compl. ¶¶ 55-57, 60-61.) The First Amended Complaint makes clear that once Vanderbilt was put on notice of Hill's concerns, it took swift action and placed her on paid administrative leave to investigate her supervisors' allegedly discriminatory conduct. Though she takes issue with the outcome of the University's investigation and claims it was a "sham," Hill does not plausibly plead that the University took any action to dissuade her from pursuing her claims.

Hill does not plausibly plead that Vanderbilt's decision to place Hill on paid administrative leave was an adverse employment action against her. "The law is well established that '[a] mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action.'" *Courts*, 2018 WL 2336377, at *9. And "[d]e minimus employment actions" and temporary actions "are not materially adverse and, thus, not actionable under [T]itle VII." *Id.* Hill's paid administrative leave to allow Vanderbilt to fully investigate and resolve Hill's concerns about the Power Plant can hardly be considered adverse. At most, it caused a temporary change in Hill's employment. Hill remains employed by the University and her job responsibilities have not changed. Because Hill's First Amended Complaint does not plausibly plead that Vanderbilt took any materially adverse action against her, her Title VII retaliation claim should be dismissed.

Neither does the First Amended Complaint plausibly plead any facts regarding a causal connection between Vanderbilt's alleged adverse action and Hill's complaints. Hill alleges that she first made complaints about her supervisors in August 2018 and continued to make complaints through 2020. Hill was placed on paid administrative leave to assist with Vanderbilt's investigation

more than a year after she first reported her concerns. This allegedly retaliatory act was independent of, and temporally distant from, the filing of Hill's charges of discrimination. Thus, Hill cannot plausibly plead a causal connection between any allegedly adverse action and her protected activity. *See Mickey v. Zeidler Tool & Die Co.*, 516, 525 (6th Cir. 2008) ("But where some time elapses between when the employer learns of a protected activity and the subsequent adverse employment action, the employee must couple temporal proximity with other evidence of retaliatory conduct to establish causality."); *Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir. 1999) ("[B]ecause the disciplinary actions occurred two to five months after [the plaintiff] filed charges, and are fairly evening spread over a period of time, the inference of a causal connection based on temporary proximity alone is tenuous.").

Finally, Hill's allegation that she was passed over for the Power Plant's Plant Manager position does not plausibly state a retaliation claim. Hill admits that she applied for the position without incident and interviewed for the role. (1st Am. Compl. ¶¶ 64-66.) Hill takes issue with the fact that Lampley was one of several people who conducted her interview for the Plant Manager position, but this alone is insufficient to state a retaliation claim. Because Hill's First Amended Complaint does not plausibly plead a causal connection between her protected activity and any alleged adverse action taken by Vanderbilt, Hill's Title VII retaliation claim should be dismissed.

### D. Hill's Title IX Discrimination and Retaliation Claims Fail as a Matter of Law

> i. *Hill's Title IX discrimination and retaliation claims are preempted by her Title VII claims.*

As an initial matter, Hill's Title IX claims should be dismissed because they are preempted by her Title VII claims. "[T]he Supreme Court has not directly spoken to the issue whether Title VII preempts Title IX where an employee brings a discrimination or retaliation case against employers subject to Title IX, and the Circuits are split on it." *Wiler v. Kent State Univ.*, No. 5:20-

cv-490, 2021 WL 809350, at *6 (N.D. Ohio Mar. 3, 2021). In the Sixth Circuit, "the law remains unsettled." *Id.* at *7. Notwithstanding this, in *Arceneaux v. Vanderbilt Univ.* Judge Batchelder, concurring in the court's opinion, wrote: "'Congress did not intend for Title IX to provide the route for an end-run around Title VII for individuals claiming employment discrimination on the basis of gender.'" 25 F. App'x 345, 349 (6th Cir. 2001).

Here, Hill's Title IX claims stem from the same facts and circumstances as her Title VII claims. Hill asserts sex discrimination and harassment under both statutory schemes. The existing law in this Circuit does not permit Hill to use Title IX to circumvent Title VII's employment discrimination scheme and bases for recovery. For this reason, Hill's Tile IX claims are preempted by her Title VII claims and should be dismissed.

> ii.     *Hill's Title IX discrimination and retaliation claims fail as a matter of law because the Power Plant is not an education program or activity covered by the statute.*

Hill's Title IX claims also fail because they did not arise in the context of an "education program or activity" and, therefore, are not cognizable under the statute. Under Title IX, "No person in the United States shall, on the basis of sex, be … subjected to discrimination under *any education program or activity* receiving Federal financial assistance." 20 U.S.C. § 1681(a) (emphasis added). In 1987, Congress used the Civil Rights Restoration Act ("CRRA") to broaden Title IX, explaining that the phrase "program or activity" means "all of the operations" of, among other entities, "a college [or] university," so long as "any part" of that college or university is "extended Federal financial assistance." 20 U.S.C. § 1687(2)(A). The CRRA retained in Title IX, however, is "the modifier 'education' before 'program or activity,'" leaving that term "undefined" and providing "no guidance" as to how to "reconcile" the language in § 1681 and § 1687. *Doe v. Mercy Cath. Med. Ctr.*, 850 F.3d 545, 554 (3d Cir. 2017). Endeavoring to provide that definition, the Third Circuit concluded that a "'program or activity' under  § 1687 is an '*education* program

or activity' under § 1681(a) if it has 'features such that one could reasonably consider its mission to be, at least in part, educational.'" *Id.* at 555. The court noted that relevant factors in determining whether "'a program or activity'" constitutes "an '*education* program or activity' under Title IX" could include whether the program or activity is "incrementally structured through a particular course of study or training"; whether it permits "participants to earn a degree or diploma"; and whether the program or activity "provides instructors, examinations, an evaluation process or grades, or accepts tuition." *Id.* at 556.

Here, much of Vanderbilt's day-to-day operations are, of course, "educational" in nature and covered by Title IX. But the Power Plant's daily operations are not. The Power Plant offers no courses, educates no students, performs no academic research, grants no diplomas, and engages in no other activities expected of an educational institution. Generating the power that just happens to keep lights on in classrooms (as well as Vanderbilt University Medical Center's hospital) is, at best, a tenuous connection to an "education program or activity." Hill's newly added allegation that the "Power Plant is an essential part of Defendant's operations" is of no consequence and does not change this fact. (1st Am. Compl. ¶ 23.) In *Chapman v. Tenn. Dep't of Transp.*, this Court reached a similar conclusion, dismissing Title IX claims brought by an operations technician who claimed that because the Department of Transportation offered some educational programs, Title IX "cover[ed] *all* of [its] programs and activities." No. 3:19-cv-01128, 2021 WL 1110668, at *4 (M.D. Tenn. Mar. 23, 2021). This Court noted that the plaintiff's harassment and retaliation claims had no "connection with any education program or activity by TDOT." *Id.* Here too, "even though [Vanderbilt] receives federal funding and is covered by Title IX as a general matter, *Plaintiff's* claims are not covered by Title IX because they did not arise from an educational program or activity." *Id.* at *4.

*iii.*      *Hill's Title IX discrimination claim fails because she insufficiently pled facts alleging Vanderbilt was deliberately indifferent to her claims.*

Even if Hill is permitted to assert her claims under Title IX, they are, nevertheless, deficient. "To sustain a claim under Title IX, a plaintiff must first show that a person or entity affiliated with a federally funded education program engaged in some form of sex-based discrimination against the plaintiff. Once those threshold matters are established, the plaintiff must make three additional showings: (1) the sex-based harassment was so severe, pervasive, and objectively offensive that it could be said to deprive the plaintiff of access to the educational opportunities or benefits provided by the school; (2) the school had actual knowledge of the harassment; **_and_** (3) the school was deliberately indifferent to the harassment." *Chisholm v. St. Marys City Sch. Dist. Bd. of Educ.*, 947 F.3d 342, 345 (6th Cir. 2020) (emphasis added). Deliberate indifference requires a showing "that an official of the institution who had authority to institute corrective measures had actual notice of, and was deliberately indifferent to, the misconduct." *Doe v. Ohio State Univ.*, 239 F. Supp. 3d 1048, 1068 (S.D. Ohio 2017).

Assuming, without conceding, that Hill sufficiently pleads the first two elements, Hill's Title IX discrimination claim fails because she insufficiently pleads Vanderbilt's deliberate indifference to her supervisors' alleged discrimination and harassment. Hill devotes just one "factual allegation"—and just one sentence—to her deliberate indifference claim, pleading: "The alleged 'review' or 'investigation' was simply a sham and evidences Defendant's deliberate indifference to Ms. Hill's complaints." (1st Am. Compl. ¶ 61.) But Hill clearly admits that administrators outside of the Power Plant, including Tuttle Bell and Jenious, escalated her concerns and that the University investigated her complaints. The fact that Hill's claims were heard, recorded, and investigated by Vanderbilt hardly evidences deliberate indifference to her complaints. In fact, before Hill's complaints were escalated to Tuttle Bell and Jenious, she admits

that Lampley said he would speak to Cook and "that he had been in discussion with Assistant Vice Chancellor Petty for a way to handle this continuing problem." (*Id.* ¶ 35.) Because Hill's First Amended Complaint states facts showing Vanderbilt acted with everything but deliberate indifference to her discrimination and harassment claims, her Title IX discrimination claim fails as a matter of law.

> iv. *Hill's Title IX retaliation claim fails for the reason her Title VII retaliation claim fails.*

To state a Title IX retaliation claim, Hill "must allege that (1) she engaged in protected activity; (2) of which [Vanderbilt] knew; (3) as a result of which, [Vanderbilt] took an adverse employment action against her; and (4) that there was a causal connection between the protected activity and [Vanderbilt's] adverse employment action." *Wiler*, 2021 WL 809350, at *7. "While she need not prove the prima facie elements at this stage of the proceedings, Plaintiff must allege facts that make these elements plausible." *Id.* As was the case with Hill's Title VII retaliation claim, Hill's First Amended Complaint does not plausibly state any facts to support a finding that Vanderbilt took any adverse employment action against her or that there is a causal connection between her protected activity and said adverse employment action. Thus, Hill's Title IX retaliation claim fails, and Vanderbilt's motion to dismiss this claim should be granted.

**E.    Hill Should Not Be Given Leave to File a Second Amended Complaint**

Should the Court grant Vanderbilt's motion to dismiss Hill's First Amended Complaint, Vanderbilt anticipates that Hill will seek leave to file a second amended complaint. This Court should deny Hill a second opportunity to amend her complaint because any amendment would be futile and would not survive a motion to dismiss. Though federal courts are generally "liberal in allowing parties to amend their complaints," "'[d]enial may be appropriate. . .where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies

by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *U.S. ex rel. Fry v. Guidant Corp.*, No. 3:03-0842, 2006 WL 1102397, *7 (M.D. Tenn. Apr. 25, 2006). Amendment is futile "'where a proposed amendment would not survive a motion to dismiss." *Hugueley v. Parker*, No. 3:19-cv-00598, 2020 WL 434254, *1 (M.D. Tenn. Jan. 28, 2020). Where that is true, "the court need not permit the amendment." (*Id.*) Vanderbilt's motion to dismiss Hill's Complaint put Hill on notice of the issues with her first complaint. For the reasons noted throughout this motion, Hill's First Amended Complaint has not rectified those pleading deficiencies. Because Hill already attempted to amend her claims and demonstrated that she cannot overcome the lapsed statute of limitations applicable to her federal and state law claims and cannot plead facts to sufficiently state a claim for discrimination or retaliation under Title VII, or for discrimination or retaliation under Title IX, a second amended complaint would unnecessarily waste the Court's and parties' time and resources. Thus, Hill should not be given a second opportunity to amend her complaint.

## IV. CONCLUSION

For these reasons, Hill's First Amended Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6).

Dated November 22, 2021                    Respectfully submitted,

                                    By:    */s/ Woods Drinkwater*
                                           Woods Drinkwater (BPRN 33838)
                                           NELSON MULLINS RILEY
                                           & SCARBOROUGH, LLP
                                           150 Fourth Avenue, North, Suite 1100
                                           Nashville, TN 37219
                                           Phone: (615) 664 –5307
                                           woods.drinkwater@nelsonmullins.com

                                           and

                                           Marquetta J. Bryan (*admitted PHV*)

Shaniqua L. Singleton (*admitted PHV*)
NELSON MULLINS RILEY
& SCARBOROUGH, LLP
201 17th Street, NW, Suite 1700
Atlanta, GA  30363
Phone: (404) 322-6000
marquetta.bryan@nelsonmullins.com
shaniqua.singleton@nelsonmullins.com

*Attorneys for Defendant Vanderbilt University*

## CERTIFICATE OF SERVICE

I certify that on November 22, 2021, I electronically filed this document with the Clerk of

the Court using the CM/ECF system which will send notification of this filing to CM/ECF

participants registered to receive service in this case, including:

Abby R. Rubenfeld
Rubenfeld Law Office, PC
202 South Eleventh Street
Nashville, TN 37206
arubenfeld@rubenfeldlaw.com

Thomas J. Mew
Buckley Beal, LLP
600 Peachtree Street, NE, Suite 3900
Atlanta, GA 30308
tmew@buckleybeal.com

John P. Nefflen
Shackelford, Bowen, McKinley & Norton, LLP
1 Music Circle South, Suite 300
Nashville, TN 37203
jnefflen@shackelford.law

*/s/ Woods Drinkwater*
Woods Drinkwater